| | |
|---|---|
| JENNIFER TORRES, Individually and on Behalf of All Others Similarly Situated, ) ) | Case No.: 17-cv-1179 |
| ) ) | **AMENDED CLASS ACTION** |
| Plaintiff, ) | **COMPLAINT** |
| vs. ) ) | |
| FRANKLIN COLLECTION SERVICE, INC., ) ) | **Jury Trial Demanded** |
| Defendant. ) ) | |

## INTRODUCTION

1.     This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2.     The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.     Plaintiff Jennifer Torres is an individual who resides in the Eastern District of Wisconsin (Milwaukee County). Her previous name was Jennifer Krueger.

4.     Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family or household purposes, namely a home telecommunications services bill.

5.     Plaintiff is a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that she engaged in a consumer transaction, Wis. Stat. § 421.301(13).

6. Defendant Franklin Collection Service, Inc. ("FCS") is a foreign corporation with its primary offices located at 2978 W. Jackson St., Tupelo, MS 38801.

7. FCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. FCS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. FCS is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

9. On or about June 7, 2017, FCS mailed a collection letter to Plaintiff regarding an alleged debt owed to "AT&T." A copy of the letter is attached to this complaint as Exhibit A.

10. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

11. Upon information and belief, Exhibit A is a form debt collection letter used by FCS to attempt to collect the alleged debt.

12. The debt referenced in Exhibit A was incurred for home internet services in Plaintiff's residence. Thus, the debt was incurred for personal, family or household purposes.

13. Upon information and belief, Exhibit A is the first debt collection letter that FCS sent to Plaintiff regarding the alleged debt identified therein.

### *Misrepresentation of FCS's Wisconsin licensing status*

14. Exhibit A states:

This collection agency is licensed by the Division of Banking in the Wisconsin Department of Financial Institutions, www.wdfi.org <http://www.wdfi.org/> .

15. The above language on a collection letter is a representation that the debt collector holds a Wisconsin Collection Agency License, pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code § DFI-Bkg. 74.

16. FCS does not, in fact, hold a Wisconsin Collection Agency License.

2

17.     FCS is not licensed by the Division of Banking.

18.     FCS did not hold a Wisconsin collection agency license at the time Exhibit A was sent to Plaintiff.

19.     FCS is not listed on the Division of Banking's website that lists all collection agencies that currently hold a Wisconsin collection agency license. http://www.wdfi.org/fi/lfs/licensee_lists/Default.asp?Browse=CA (visited August 16, 2017).

20.     A representative of the Division of Banking confirmed to Plaintiff's counsel over the telephone that FCS has never held a Wisconsin collection agency license.

21.     A false statement about a debt collector's licensing status is a material false statement. "It suggests that [the debt collector] has been approved by the state, thereby enhancing in the mind of the unsophisticated consumer [the debt collector's] legitimacy and power to collect the debt." *Radaj v. ARS Nat. Services, Inc.*, No. 05 C 773, 2006 U.S. Dist. LEXIS 68883 at *10; 2006 WL 2620394 at *3 (E.D. Wis. Sep. 12, 2006); *Seeger v. Aid Assocs.*, 2007 U.S. Dist. LEXIS 22824 at *13, 2007 WL 1029528 (E.D. Wis. Mar. 29, 2007) ("this court believes that the false statement used by Plaza that it was licensed by the state of Wisconsin, is precisely the kind of misrepresentation that Congress sought to prohibit when it passed the FDCPA.").

### *False litigation threat*

22.     In addition, Exhibit A threatens litigation against Plaintiff.

23.     Exhibit A includes the following language:

██████████████    ██████████████████████████    IF YOU ARE NOT PAYING THIS ACCOUNT, CONTACT YOUR ATTORNEY REGARDING OUR POTENTIAL REMEDIES, AND YOUR DEFENSES, OR CALL (888) 215-8961.

24.     The unsophisticated consumer would interpret FCS's directive to "contact your attorney regarding our potential remedies, and your defenses" as a threat of imminent legal action.

3

25.    Debt collection letters that falsely "communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made," violate the FDCPA. 15 U.S.C. § 1692e(5); *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998); *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 24-26 (2d Cir. 1989). Such conduct also violates Wis. Stat. § 427.104(1)(L).

26.    Even indirect or oblique threats of legal action give rise to liability, provided they indicate that "legal action is underway or contemplated in the near future." *Jenkins*, 999 F. Supp. At 1136; *Bloodworth v. United Credit Serv.*, No. 15-cv-0502, 2016 U.S. Dist. LEXIS 49129 *4-6 (E.D. Wis. Apr. 12, 2016) ("This five-day deadline combined with the statement that delay would not be tolerated could give the unsophisticated consumer a sense that further action was imminent.").

27.    FCS is an out-of-state debt collector and is not a law firm.

28.    FCS has no ability to sue Plaintiff to collect an alleged debt owed to AT&T. AT&T would be the real party in interest in any lawsuit.

29.    Moreover, FCS has no insight into or control over AT&T's litigation strategies.

30.    Upon information and belief, FCS had no knowledge whether AT&T intended to sue Plaintiff or any class member to collect the alleged debts.

31.    A search of CCAP reveals that, as of August 23, 2017, AT&T had not sued Plaintiff to collect the alleged debt identified in <u>Exhibit A</u>.

### ***<u>Overshadowing the validation notice</u>***

32.    <u>Exhibit A</u> also fails to provide the required validation notice by including additional statements contradicting or overshadowing the validation notice. 15 U.S.C. § 1692g(a).

4

33.    <u>Exhibit A</u> tells the consumer "if you are not paying this account, contact your attorney regarding our potential remedies, and your defenses, or call (888) 215-8961."

34.    A refusal to pay an alleged debt, whether valid or not, is a "dispute," as it is clearly a dispute about the "character, amount, or legal status of any debt." *See* 15 U.S.C. § 1692e(2)(a).

35.    The practical effect of the request to call FCS is to discourage consumers from disputing debts in writing.

36.    An oral dispute does not trigger the FDCPA verification requirements, which includes a temporary suspension of collection efforts until verification is provided. 15 U.S.C. § 1692g(b).

37.    FCS did not effectively convey to the consumers their rights under the FDCPA. *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. 2003); *see also Desantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (a "debt collector violates the Act if it fails to convey the information required by the Act.").

38.    The consumer is not required to rely upon the debt collector to voluntarily comply with the FDCPA. *McCabe*, 272 F. Supp. 2d at 738 ("However, Crawford misses the point of the protection found in § 1692g(a)(4). Although a debt collector *may* provide verification upon *oral* notification, the debt collector *must* provide verification upon *written* notification. If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.").

39.    Failure to provide the correct validation notice within five days of the initial communication with Plaintiff and the class is a *per se* violation of the FDCPA. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 2016 U.S. App. LEXIS 6361 *15-16 (7th Cir. Apr. 7,

2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).).

40.     For purposes of Plaintiff's claim under 15 U.S.C. §§ 1692e and 1692e(10), Defendants' omission is a material violation of the FDCPA. A consumer who attempts to orally exercise verification rights or a request for the identity of the original creditor does not effectively invoke his or her rights under 15 U.S.C. § 1692g(b):

> (b) **Disputed debts**
> If the consumer notifies the debt collector *in writing* within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector *in writing* that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(emphasis added).

41.     FCS's statement that the consumer could write or call with questions about a debt overshadows the validation notice. 16 U.S.C. § 1692g.

42.     The FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

43.     15 U.S.C. § 1692e(2)(a) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

6

44.     15 U.S.C. § 1692e(5) specifically prohibits "The threat to take any action that cannot legally be taken or that is not intended to be taken."

45.     E9

46.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

47.     15 U.S.C. § 1692g(b) states, in part:

(b) **Disputed debts**
…
Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

48.     Failure to provide the correct validation notice pursuant to 15 U.S.C. § 1692g(a) is a *per se* violation of the FDCPA. No analysis of materiality of the error or omission is required. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).").

49.     Wis. Stat. § 427.104(1)(k) specifically prohibits a debt collector from using "a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney−at−law when it is not.

50.     Wis. Stat. § 427.104(1)(L) specifically prohibits a debt collector from "Threaten[ing] action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

51.     The false, confusing and misleading statements in <u>Exhibit A</u> are material false statements. *See Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009).

7

52.    A collection account is a negative item that lowers a consumer's credit score and generally remains on the consumer's "credit report" for seven years.

53.    Consumers are concerned about their credit scores and are likely to take action to avoid negative reporting.

54.    The consumer is likely to be deceived into paying or settling, whether the debt is legitimate or not, to preserve her credit score.

55.    Plaintiff was confused by Exhibit A.

56.    The unsophisticated consumer would be confused by Exhibit A.

57.    Plaintiff had to spend time and money investigating Exhibit A.

58.    Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

59.    The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'");*Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016)

8

("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

60.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

## COUNT I -- FDCPA

61.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

62.     Exhibit A falsely states that: "This collection agency is licensed by the Division of Banking" for the State of Wisconsin.

9

63.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

64.     15 U.S.C. § 1692e(1) specifically prohibits the false representation that "the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof."

65.     15 U.S.C. § 1692e(9) specifically prohibits "the use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval."

66.     FCS violated 15 U.S.C. §§ 1692e, 1692e(1) and 1692e(9) by falsely telling consumers that FCS was licensed by the State of Wisconsin's Division of Banking.

## COUNT II – FDCPA

67.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

68.     Together, the settlement offer and threat of credit reporting in Exhibit A conflict with and overshadow the debt validation notice.

69.     Exhibit A demands a payment within the validation period or shortly thereafter, but does not explain how the validation notice and credit reporting "deadline" fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

70.     Exhibit A is confusing, deceptive, and/or misleading to the unsophisticated consumer.

10

71.     FCS's misrepresentation is material, as it could provoke the consumer into paying on false pretenses or foregoing validation – either to take advantage of a purported discount, or to improve or limit damage to her credit score, or both.

72.     FCS violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), 1692g(a) and 1692g(b).

## COUNT III -- FDCPA

73.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

74.     Exhibit A threatens litigation against the recipient.

75.     The unsophisticated consumer would interpret language like "contact your attorney regarding our potential remedies, and your defenses" as a threat of imminent legal action.

76.     FCS, in fact, had no authority or ability to sue Plaintiff to collect a debt allegedly owed to AT&T.

77.     AT&T has not sued Plaintiff almost 11 months after the date on Exhibit A.

78.     FCS violated 15 U.S.C. §§ 1692e, 1692e(5) and 1692e(10).

## COUNT IV – WCA

79.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

80.     The alleged underlying transaction, i.e. incurring debt for the purpose of personal entertainment, was a consumer credit transaction or consumer transactions with an agreement to defer payment.

81.     By using a letter which falsely represented REV-1's licensing status in Exhibit A, Defendant used a communication which gave the appearance of being authorized or approved by a governmental agency (the Division of Banking).

11

82. Defendant violated Wis. Stat. § 427.104(1)(k).

83. As a result of FCS's violation of the WCA, FCS is liable for statutory damages of an amount between $100 and $1,000 per class member and an award of reasonable attorneys' fees and costs.

## COUNT V – WCA

84. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

85. FCS's letters falsely represented that AT&T would sue Plaintiff and class members.

86. In fact, AT&T had not determined whether it would sue Plaintiff or any class member when Exhibit A was mailed to the class.

87. Moreover, FCS had no authority or intent to sue Plaintiff or class member. AT&T would be the real party in interest.

88. FCS violated Wis. Stat. § 427.104(1)(L).

89. As a result of FCS's violation of the WCA, FCS is liable for statutory damages of an amount between $100 and $1,000 per class member and an award of reasonable attorneys' fees and costs.

## CLASS ALLEGATIONS

90. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between August __, 2016 and August __, 2017, inclusive, (e) that was not returned by the postal service.

12

91.     The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

92.     There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with 15 U.S.C. §§ 1692e and 1692g.

93.     Plaintiff's claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

94.     Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

95.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

### JURY DEMAND

96.     Plaintiff hereby demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  August 29, 2017

**ADEMI & O'REILLY, LLP**

By:     /S/ John D. Blythin_____

13

Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com

14